8317.  NORTHWESTERN NATIONAL INSURANCE CO. *v.* SOUTHERN STATES PHOSPHATE AND FERTILIZER CO.

BROYLES, P. J.    1.  In a suit upon a policy of fire insurance it is incumbent upon the plaintiff to allege in his petition that the property destroyed by fire belonged to him, or that he had some insurable interest therein, at the time of the fire.   Civil Code (1910), § 2472; *Morris v. Imperial Insurance Co.,* 106 *Ga.* 461 (32 S. E. 595); 1 Cooley's Insurance, 215, 216; *Hardwick v. State* Insurance Co., 20 Or. 547 (26 Pac. 840); Western Assurance Co. *v.* McCarty, 18 Ind. App. 449 (48 N. E. 265); Dickerman *v.* Vermont Mutual Fire Insurance Co., 67 Vt. 99 (30 Atl. 808); Gustin *v.* Concordia Fire Insurance Co., 164 Mo. 172 (64 S. W. 178).

(*a*) Where the petition contains no such allegation, no cause of action is set forth.

(*b*) An assignment of the policy as collateral security will not enable the assignee to maintain an action, unless it is alleged in the petition that at the time of the fire he had 'an interest in the property insured. Peabody *v.* Washington County Mutual Insurance Co., 20 Barb. (N. Y.) 339; Fowler *v.* New York Indemnity Insurance Co., 26 N. Y. 422; Bayles *v.* Hillsboro Insurance Co., 27 N. J. Law, 163.

(*c*) A simple contract creditor, without a lien either statutory or contract, without a jus in re or a jus in rem, owning a mere personal claim against his debtor, has no insurable interest in the property of the debtor.   Creed *v.* Sun Fire Office, 101 Ala. 522 (14 So. 323, 23 L. R. A. 180, 46 Am. St. R. 134); Foster *v.* Van Reed, 5 Hun (N. Y.), 321; Monroe Building &c. Association *v.* Liverpool &c. Insurance Co., 50 La. Ann. 1243, 1246 (24 So. 238); Bishop *v.* Clay Fire &c. Insurance Co., 49 Conn. 167.

2.  In a policy of insurance a loss-payable clause which contains a stipulation to pay a named mortgagee to the extent of his interest in the policy does not amount to an assignment of the policy, but is a provision merely that the mortgagee is an appointee to collect the insurance money due to the insured in case of loss; and the mortgagee must claim in the right of the insured, and not in his own.   *Hartford Fire Insurance Co.* v. *Liddell,* 130 *Ga.* 8, 13 (60 S. E. 104, 124 Am. St. R. 157); Brunswick Savings Institution *v.* Commercial Union Insurance Co., 68 Me. 313 (28 Am. Rep. 56); Delaware Insurance Co. *v.* Greer, 61 L. R. A. 137, 139 (120 Fed. 916, 57 C. C. A. 188).

(*a*) The language in the "certificate of insurance" in the instant case is in some respects\ analogous to such a loss-payable clause, but it is ob-

vious that the holder and assignee of this "certificate" does not occupy as favorable a position as the mortgagee to whom a policy is made payable "as his interest may appear," since in such a clause there is an express promise by the insurance company to pay to the mortgagee, and, in addition, such mortgagee has, to the extent of his mortgage, an interest in the property insured.

3. A custom, although universal in a particular locality, which contravenes a positive statute, is invalid, and does not become part of the contract. *Deadwyler* v. *Karow,* 131 *Ga.* 227 (62 S. E. 172, 19 L. R. A. (N. S.) 197).

(a) Where a local custom contravenes a positive statute, before it can become part of the contract it must appear that the party sought to be bound by it expressly agreed to waive his rights under the statute. *Fleming* v. *King,* 100 *Ga.* 449 (28 S. E. 239).

4. A contract of insurance, to be binding, must be in writing. Civil Code (1910), § 2470.

(a) An assignment of such a contract must likewise be in writing. *St. Paul Fire &c. Insurance Co.* v. *Brunswick Grocery Co.,* 113 *Ga.* 786 (3) (39 S. E. 483); *National Fire Insurance Co.* v. *Grace,* 106 *Ga.* 264 (32 S. E. 100); *Hartford Fire Insurance Co.* v. *Amos,* 98 *Ga.* 533 (25 S. E. 575).

5. A note which on its face is subject to the terms of the contract between the maker and the payee is not a negotiable instrument. *Hodges* v. *Hall,* 5 *Ga.* 163; *Fountaine* v. *Urquhart,* 33 *Ga. Supp.* 184; *Corbett* v. *State,* 24 *Ga.* 287; Klots Throwing Co. *v.* Manufacturers' Commercial Co., 179 Fed. 813 (103 C. C. A. 305, 30 L. R. A. (N. S.) 40), note; American Exchange Bank *v.* Blanchard, 7 Allen (Mass.), 333; 4 Am. & Eng. Enc. Law (2d ed.), 85.

(a) The "certificate of insurance" in the instant case was not even a promissory note, and, as it shows on its face that it is subject to the provisions of the policy of insurance, it, *a fortiori,* is not a negotiable instrument, although it is so denominated in the "certificate" itself.

6. When the principles of law stated above are applied to the pleadings in the instant case, it appears that neither the original nor the amended petition set forth a cause of action, and that the court erred in overruling the general demurrers interposed thereto.

7. The ruling in the preceding paragraph being controlling in this case, it is unnecessary to pass upon the question as to whether the petition was subject to the special demurrers filed.

<em>Judgment reversed. Jenkins and Bloodworth, JJ., concur.</em>

DECIDED JULY 19, 1917.

Action on insurance policy; from Richmond superior court—Judge H. C. Hammond. December 16, 1916.

The original petition was as follows:

"State of Georgia, Richmond county. In the superior court of said county.

"The petition of Southern States Phosphate & Fertilizer Com-

pany, a corporation, shows that the Northwestern National Insurance Company is indebted to it in the sum of two thousand ($2,000) dollars, besides interest, arising on the following state of facts:

"1. The defendant insurance company is a corporation organized under the laws of the State of Wisconsin, and having an agency and place of doing business in the city of Augusta, in said county.

"2. Petitioner shows that the defendant company made in writing a policy of fire insurance to Luke & Fleming, a partnership doing the business of cotton factors in the city of Augusta; that said policy bears the number of 506, and is dated September 26, 1915, and stipulates that in consideration of an annual premium of forty-two ($42) dollars, the said Luke & Fleming are thereby insured until the 25th day of September, 1916, to the amount of two thousand ($2,000) dollars, against direct loss or damage by fire to cotton in bales while contained in the rear of the one-story metal-roof building situated on the east side of Eighth street, No. 116, in the city of Augusta, Georgia, and known as Block No. 1.

"3. Petitioner alleges that on October 20, 1915, and while the aforesaid policy of fire insurance was in full force and effect, the defendant company, by its authorized agents at Augusta, Ga., to wit, Timberlake & Eve, with the authority and consent of the defendant company so to do, executed and delivered a written certificate of fire insurance upon said policy to the said Luke & Fleming, the insured as aforesaid, said certificate of insurance being in words and figures as follows, to wit: 'No. 506. Certificate of Fire Insurance. $2,000. Augusta, Ga., Oct. 26, 1915. This certifies that Luke and Fleming have with Northwestern National Ins. Co. under Policy No. 506 entry———— to the amount of two thousand dollars on cotton in bales, while contained in the rear of the one-story brick metal-roof building situated on the east side of Eighth street, No. 116, in Augusta, Ga., and known as Block No. 1, sheet No. 16, terminating 25th day of September, 1916, at noon. Loss, if any, in conformity with the conditions of said policy, to be adjusted with————and payable to assured or order only on presentation of and surrender of this certificate. Not valid until countersigned by the authorized agent at Augusta, Georgia. Countersigned at Augusta, Ga., this 26th day of October, 1915. Timberlake and Eve, General Insurance Agents, Au-

gusta, Ga. (Signed) Timberlake & Eve, Agents. (Endorsed on back, 'Luke & Fleming'.)'

"4. Petitioner alleges that at and before the time the aforesaid certificate of insurance was issued, it was the universal practice of fire-insurance companies in Augusta, Georgia, including the defendant company, writing policies of fire insurance for cotton factors upon cotton held or stored in said city of Augusta by them, to issue to the insured, at their request, upon valid and subsisting policies of fire insurance, certificates of insurance in substance substantially like that certificate set out in paragraph 3 hereof, the purpose and intent of both insurer and insured in issuing and accepting such certificates of insurance being that such certificate of insurance should stand for and in lieu of the policy upon which it was issued, and might be pledged, transferred, and assigned by indorsement and delivery. It was furthermore the universal practice with respect to such certificates of insurance that no valid or subsisting policy of insurance upon which a certificate of insurance was issued and outstanding would be accepted for cancellation, or cancelled by the insurance company issuing the same, nor settlement thereof made with or for the insured therein, without the surrender to the insurance company of the outstanding certificate of insurance by or for the legal holder thereof; which said customs became and were a part of the certificate of insurance issued by said defendant company to said Luke & Fleming with a full knowledge of said customs.

"5. Petitioner alleges that on the 26th day of October, 1915, the said Luke & Fleming assigned and transferred, by their written endorsement, and delivered the aforesaid certificate of fire insurance to it as collateral security, for an indebtedness of said Luke & Fleming to petitioner amounting to twenty thousand ($20,000) dollars.

"6. Petitioner shows that on March 22, 1916, there was contained and stored in the premises described in said certificate of fire insurance six hundred and ninety-six (696) bales of cotton, insured by the defendant company by its fire-insurance policy aforesaid against loss or damage by fire to the amount of two thousand ($2,000) dollars.

"7. That all of said cotton was totally destroyed by fire on the 22d day of March, 1916, and was then of the value of forty-one

thousand, eight hundred ninety-four and 93/100 ($41,894.93) dollars.

"8. Petitioner avers that at the time of the destruction by fire of the cotton aforesaid, and while petitioner was the legal holder of said certificate of fire insurance as collateral security as aforesaid, the said Luke & Fleming were indebted to it in a sum in excess of two thousand ($2,000) dollars upon the original indebtedness, which said certificate of insurance was transferred to it to secure, and that the indebtedness of said Luke & Fleming to petitioner. upon said original debt is still, at the time of bringing this suit, in excess of said sum of two thousand ($2,000) dollars.

"9. Petitioner shows that due notice of said loss, with proofs of the same in accordance with the requirements of the aforesaid policy of fire insurance, were duly furnished to said defendant company on May 9th, 1916, by said Luke & Fleming on behalf of petitioner.

"10. Petitioner shows that on the 22d day of August, 1916, it gave written notice to the defendant company that it then was the legal holder of said certificate of insurance, and that it was entitled to be paid the amount stipulated in said policy of fire insurance, to wit: the sum of two thousand ($2,000) dollars, and accordingly demanded payment by the defendant company to it of said sum.

"11. Petitioner avers that the original policy of fire insurance issued by the defendant company as aforesaid to the said Luke & Fleming is not in its possession, custody, or control, but that the same was, by the mutual mistake of the said Luke .& Fleming, who had and held the same, and Timberlake & Eve, defendant's agents, delivered to Timberlake & Eve, at Augusta, Ga., the agents of the defendant insurance company, without the knowledge or consent of petitioners, and while the aforesaid certificate of fire insurance was outstanding and in their lawful custody acquired by them and then being held by them in the manner and form hereinbefore alleged.

"12. That it is, for the reasons set out in the foregoing paragraph, not in the power of petitioner to attach a copy of said original policy of fire insurance to this its petition, nor to make accurate extracts therefrom wherever pertinent to this petition.

"13. Petitioner shows that the defendant company was bound by the terms of said policy to pay to petitioner, as the legal holder

of said certificate of insurance issued thereupon, the amount of said loss within sixty (60) days thereafter, and although sixty (60) days had elapsed said defendant has not paid the same, nor any part thereof, and still owes the same, to wit, the sum of two thousand ($2,000) dollars, and therefore petitioner brings this action.

"Wherefore, petitioner prays: First, that the defendant company be required to produce the original policy 'of fire insurance issued by it to said Luke & Fleming, upon which said certificate of fire insurance was issued as aforesaid, and have the same in court subject to petitioner's inspection and use. Petitioner prays further that process may issue directed to the defendant company, requiring it to be and appear at the superior court of said county to be held on the third Monday in September, 1916, to answer your petitioner's complaint."

The amendment to the petition added merely, in an exhibit, a copy of the face of the policy of fire insurance, "including all stipulations thereof embraced in that part of said policy which precedes the signature of the company's officers by whom said policy was executed."

*Slade & Swift,* for plaintiff in error.

*Callaway & Howard,* contra.