17183.   COLONIAL TRUST CO. v. FIREMAN'S FUND
INSURANCE CO.

1. The policy of insurance was issued to R. C. Shaw who had no title to
the property and therefore was "without insurable interest and legally
incapable of taking out a policy" on the property covered by the policy.
As R. C. Shaw was not the owner of the property insured, the principle
announced in *Southern States Fire &c. Ins. Co.* v. *Napier*, 22 *Ga. App.*
.361 (2) (96 S. E. 15), is not applicable to this case.

2. Even should it be conceded that the petition contains all the elements
necessary for a suit on an "account stated," there is no evidence to show
that the Fireman's Fund Insurance Company had at any time ever
agreed to pay the amount fixed by the adjuster as its part of the loss.

DECIDED JUNE 15, 1926.

Complaint on fire policy; from Tift superior court—Judge Eve.
January 7, 1926.

R. C. Shaw secured two policies of insurance on a dwelling
house which was owned by his wife; one with the Fire Association
of Philadelphia for $2500, and the other in the Fireman's Fund
Insurance Company for $1000. To the latter policy was attached
what is known as a "New York Standard Mortgagee Clause," with
the loss payable to the Marietta Trust & Banking Company, to
which company a deed to the property insured had been given by
Robert M. Smith to secure a loan. Smith subsequently conveyed
the property to Mrs. Shaw, and she assumed the loan. The record
shows also that all rights of the Marietta Trust & Banking Com-
pany to the said property were conveyed to the Colonial Trust
Company, which was to act as trustee for the Marietta Trust &
Banking Company. The dwelling was burned. An adjuster fixed
the amount of the loss at $1971. The Fire Association of Phila-
delphia paid its proportionate part of the loss. The Fireman's
Fund Insurance Company refused to pay, and suit was brought for
$563.14, the proportionate part of the loss of the Fireman's Fund
Insurance Company, by "The Colonial Trust Company of Atlanta,
Ga., trustee for the Marietta Trust & Banking Company." It was
agreed by counsel representing both plaintiff and defendant that
the judge "should determine the matters upon the law and evi-
dence." The court directed a verdict for the defendant, and plain-
tiff excepted.

Accounts and Accounting, 1 C. J. p. 728, n. 94.
Fire Insurance, 26 C. J. p. 35, n. 42; p. 438, n. 45.

*C. A. Christian,* for plaintiff.

*Smith, Hammond & Smith, C. W. Fulwood,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) 1. In the order refusing to the plaintiff another trial, the judge said in part: "It is apparent that R. C. Shaw, the husband of Mrs. R. C. Shaw, the owner of the premises insured, in the taking out of the policy was acting in the interests of the Marietta Loan & Trust Company, the beneficiary in the loss-payable clause. This being true, the Marietta Loan & Trust Company was under legal obligation, and in the exercise of reasonable diligence could have known that R. C. Shaw, in whose name the policy was written and who evidently represented himself to [be?] the owner of the equity in the real estate insured, was not such in fact and had no interest in the property. The insurance company, the defendant in this case, was under no legal obligation to investigate; they placed in the hands of Shaw, who represented himself to be the owner or one with an insurable interest, a policy containing a stipulation that misrepresentation as to ownership would mean cancellation of the policy. Shaw delivered the policy to the Marietta Trust & Loan Company, and it was their duty to have determined the correctness of his representations of insurable interest. They failed to do this at their own risk, and as Shaw was acting for them, was without insurable interest, and legally incapable of taking out a policy, the loss must fall on the principal." We agree with the judge in the conclusion that Shaw "was without insurable interest and legally incapable of taking out a policy" on the property insured. However, the plaintiff insists "that even if R. C. Shaw had no interest in the property, but that the title thereto was in his wife instead, the legal title being in the plaintiff in this case, they would not be affected (since the New York Standard clause was attached to the policy) by any misrepresentation made to the company on the part of Shaw;" and as supporting this contention they cite *Southern States Fire & Casualty Ins. Co.* v. *Napier,* 22 *Ga. App.* 361 (supra), and *Equitable Fire Ins. Co.* v. *Jefferson Standard Life Ins. Co., 26 Ga. App.* 241, 246 (105 S. E. 818). We can not agree with this contention of counsel, or that this contention is supported by the authorities cited. Those cases are differentiated from the one now under consideration by the fact that in each of them the property was insured by the owner thereof.

2. Even should we concede that the petition contains all the elements necessary for a suit on an "account stated," there is no evidence to show that the insurance company at any time ever agreed to pay the amount fixed by the adjuster as its part of the loss. It is true that C. A. Christian, the attorney who represented the plaintiff, swore that R. A. Peeples, an insurance adjuster, fixed the amount of the loss and prorated it between the two policies on the property, and that "this amount was agreed upon on behalf of the plaintiff in this case, and he (Christian) so stated to R. A. Peeples when the adjustment was made." This does not show that the adjuster had any authority to bind the insurance company. On the contrary, Mr. Peeples swore that he was not the agent of the Fireman's Fund Insurance Company, that he was an independent adjuster, that he had no authority to bind the company to pay any specific amount, that when he had adjusted a loss he could only recommend that amount to the company, and that he had nothing to do with the payment of the loss. There is nothing in this testimony that shows that the adjuster had any power or authority to bind the insurance company, or that he undertook to bind it by any promise to pay the amount fixed as its pro rata part of the loss. Nor is there in either of the telegrams in the record anything which would bind the Fireman's Fund Insurance Company to pay any loss on the property insured.

3. The court did not err in directing a verdict for the defendant, nor in thereafter refusing to the plaintiff a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*